U. S. DISTRICT COURT
Southern District of Ga.
Filed in Office
5:03 P.M
Sept 15 2008
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

NORFOLK SOUTHERN RAILWAY )
COMPANY, )
  )
  Plaintiff, )
  )
v. ) CASE NO. CV407-155
  )
BRAMPTON ENTERPRISES, LLC )
d/b/a SAVANNAH RE-LOAD, )
  )
  Defendant. )
  )

## O R D E R

Before the Court are the Motion for Summary Judgment by Defendant Brampton Enterprises, LLC d/b/a Savannah Re-Load ("Savannah Re-Load")(Doc. 25) and the Motion for Partial Summary Judgment by Plaintiff Norfolk Southern Railway Company (Doc. 29). For the reasons that follow, Savannah Re-Load's Motion for Summary Judgment is **GRANTED**, and Norfolk Southern's Motion for Partial Summary Judgment is **DENIED**.[1]

### BACKGROUND

Defendant Savannah Re-Load is a warehouse business that receives and forwards freight. In late 2006, Savannah Re-Load began handling freight shipped on rail cars owned by Plaintiff Norfolk Southern.

---

[1] Norfolk Southern's Request for Oral Argument (Doc. 50) is **DENIED**.

Norfolk Southern transported freight on behalf of various shippers and delivered it to Savannah Re-Load. The majority of the bills of lading for the freight identified Savannah Re-Load as the consignee who was to receive the goods. A "bill of lading" is a "document of title acknowledging the receipt of goods by a carrier or by the shipper's agent" and "a document that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods." Blacks' Law Dictionary 159 (7th ed. 1999). A "consignee" is "one to whom something is consigned or shipped." See Webster's Third New International Dictionary (1971)(unabridged). "Consign" means "[t]o transfer to another's custody or charge" or "[t]o give (goods) to a carrier for delivery to a designated recipient." Black's Law Dictionary 303 (7th ed. 1999).

Under the controlling tariff set by Norfolk Southern, a consignee is allowed two days to unload freight without incurring demurrage charges. Demurrage is "a charge exacted by a carrier from a shipper or consignee on account of a failure to load or unload cars within the specified time prescribed by the applicable tariffs. Railroads charge shippers and receivers of freight 'demurrage' fees if the shippers or receivers detain freight cars on the

2

rails beyond a designated number of days." CSX Transp. Co. v. Novolog Bucks County, 502 F.3d 247, 251 n.1 (3d Cir. 2007)(quoting Union Pac. R.R. Co. v. Ametek, Inc., 104 F.3d 558, 559 n.2 (3d Cir. 1997)). "It is intended to both compensate for the delay, and to promote efficiency by deterring undue delays." CSX Transp., Inc. v. City of Pensacola, 936 F. Supp. 880, 883 (N.D. Fla. 1995)(internal citation omitted).

Norfolk Southern alleges that Savannah Re-Load is liable for demurrage for the failure to timely unload and return the rail cars. It relies on the bills of lading, which identify Savannah Re-Load as a consignee. After the delays, Norfolk Southern sent invoices to Savannah Re-Load for the demurrage charges.[2] These invoices also identified Savannah Re-Load as the consignee.

Savannah Re-Load maintains that it was not a consignee for the freight and is, therefore, not liable for demurrage. According to Savannah Re-Load, freight-forwarding companies make their transport arrangements—to send freight via Norfolk Southern or other carriers—without

---

[2] Norfolk Southern computes demurrage monthly. At the end of each month, a customer's total demurrage days are netted against total credits for returning rail cars early. If total demurrage days exceed credits, those days are charged at the daily rate for demurrage as published in Norfolk Southern's tariff. (See Doc. 26 Ex. C.)

Savannah Re-Load's input. (See Groves Aff., Doc. 26 Ex. A.) The freight-forwarding companies unilaterally give Savannah Re-Load notice that a given shipment is enroute to its facility. After the freight arrives at the facility, Savannah Re-Load unloads the freight and forwards it to various ports for export according to instructions from the freight-forwarding company. Savannah Re-Load never takes any ownership interest in the freight it handles and is never the freight's final destination. Savannah Re-Load is never a party to the transportation contract, and only operates as instructed by the freight-forwarding companies. (Id.)

Savannah Re-Load also contends that it is neither provided with copies of the bills of lading nor informed of the contents of the bills of lading. (Id. at 1.) With respect to the freight at issue in this case, Savannah Re-Load did not draft, approve of, or receive any bills of lading associated with the rail freight at any time. Similarly, it did not receive copies of the purchase or transportation contracts. In general, Savannah Re-Load does not inspect or evaluate freight to see if it arrives in conformity with the purchase or transportation contract. Savannah Re-Load admits that it was identified as a consignee in the bills of lading, but claims that this was

4

a unilateral act of the shipper, about which it had no knowledge. (Id.)

## ANALYSIS

It is well-established that one must be a consignee or a party to the transportation contract in order to be liable for demurrage. Middle Atl. Conference v. United States, 353 F. Supp. 1109, 1118 (D.D.C. 1972). The parties agree that the issue before the Court in this case is whether Defendant Savannah Re-Load was a consignee of the freight delivered by Plaintiff Norfolk Southern. Norfolk Southern contends that Savannah Re-Load was a consignee because it was identified as a consignee on the bills of lading and because it accepted delivery of the rail cars and the freight. Savannah Re-Load argues that it cannot be made consignee merely because a third party unilaterally listed it as such without its knowledge or consent.

**I. Savannah Re-Load did not receive notice that it was listed as a consignee.**

Savannah Re-Load claims that it did not receive notice that it was listed as a consignee in the bills of lading. The operator of Savannah Re-Load, Billy Groves, states that Savannah Re-Load did not receive any bills of lading and was never informed that the bills of lading identified it as a consignee. (Groves Aff. at 1-2.)

5

Norfolk Southern acknowledges that it did not provide Savannah Re-Load with bills of lading because this is not standard practice in the industry. Norfolk Southern surmises that Savannah Re-Load received notice of its consignee designation in the forwarding instructions from the freight-forwarding companies, but there is no evidence of this. Norfolk Southern informed Savannah Re-Load of the consignee designation in invoices it sent to Savannah Re-Load for demurrage <u>after</u> the delays occurred, and therefore after the demurrage claim arose. There is no other evidence that Savannah Re-Load received any notice that it was designated as a consignee on the bills of lading.

In the absence of a genuine issue of material fact, the Court finds that Savannah Re-Load had no knowledge that it was listed as a consignee until after the delays occurred.

## II. Savannah Re-Load was not a consignee.

The Court holds that Savannah Re-Load cannot be made a consignee by the unilateral action of a third party, particularly where Savannah Re-Load was not given notice of the unilateral designation in the bills of lading. There are no binding decisions on this issue in the Eleventh Circuit, and other courts have issued conflicting decisions. But, as explained below, the weight of

6

authority supports this holding and provides the more reasonable result under the specific facts of this case.

The Interstate Commerce Commission Termination Act (ICCTA) governs the demurrage liability of consignee-agents when the transportation is provided by a rail carrier. The consignee-agent liability provision provides, in pertinent part:

> When the shipper or consignor instructs the rail carrier transporting the property to deliver it to <u>a consignee that is an agent only</u>, not having beneficial title to the property, <u>the consignee</u> is liable for rates [for transportation] billed at the time of delivery for which <u>the consignee</u> is otherwise liable, but not for additional rates [including demurrage] that may be found to be due after delivery if <u>the consignee</u> gives written notice to the delivering carrier before delivery of the property (A) of the agency and absence of beneficial title; and (B) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

49 U.S.C. § 10743(a)(1).

In a case involving similar facts, the Seventh Circuit held that this statute "applies only to agents who are also consignees, and not to agents who are not consignees." <u>Ill. Cent. R.R. Co. v. S. Tec Develop. Warehouse, Inc.</u>, 337 F.3d 813, 817 (7th Cir. 2003). After concluding that the statute only applies to consignees, the court reasoned that the preliminary issue was whether the defendant warehouseman was a consignee. Although the case was

7

remanded to the district court for a final determination of the warehouseman's status, the Seventh Circuit stated that "being listed by third parties as a consignee on some bills of lading is not alone enough to make a [warehouseman] a legal consignee liable for demurrage charges." Id. at 821.

The South Tec opinion is consistent with several other decisions. In Southern Pacific Transportation Co. v. Matson Navigation Co., 383 F. Supp. 154 (N.D. Cal. 1974), the court held that the defendant terminal operator was not liable for demurrage. The defendant was not named as consignee on the bills of lading for most of the shipments, but was named as consignee for some of the shipments. First, the court held that the defendant could not be liable for demurrage where the bills of lading named it as a "care of" party and not as consignee. The court then stated:

> Turning now to those instances where [the terminal operator] was named consignee on the railroad bill of lading, the Court observes that the holding set forth above does not necessitate a holding here that anyone named as consignee in a contract of transportation can be held liable for demurrage.
> There is no evidence that [the terminal operator] authorized shippers to consign goods to it or that it performed its task differently in those instances. In fact the sole difference between the two situations was the shipper's unilateral decision whom to name as consignee. The instant case differs in this respect from the others cited by the parties, where the consignee

> was either the purchaser of the cargo or, at least, the person to whom final delivery was to be made and who thus had an interest in and control over the cargo.

Id. at 157. Based on this reasoning, the court held that the defendant was not liable for demurrage where it was unilaterally named by the shipper as consignee in the bills of lading. To hold otherwise, stated the court, "would be to place a connecting carrier's liability totally within the shipper's control, a result the [c]ourt cannot sanction." Id.; see also Union Pac. R.R. Co. v. Carry Transit, Inc., No. 3:04-CV-1095B (N.D. Tex. 2005)(declining to "untether the law of demurrage from its contractual moorings" and holding that "a [shipper's] unilateral decision to name a non-party to the transportation contract . . . as a consignee without its consent does not render the non-party a consignee liable for demurrage charges"); W. Md. Ry. Co. v. S. African Marine Corp., 1987 WL 16153, *4 (S.D.N.Y. 1987)(holding that a connecting ocean carrier is not liable for rail demurrage charges "merely by virtue of being named by the shipper as the consignee in the rail bills of lading"); see generally CSX Transp., Inc. v. City of Pensacola, 936 F. Supp. 880, 884 (N.D. Fla. 1995)(finding defendant not liable for demurrage where it had not been named as consignee in the

bills of lading, but stating in dicta that the "unilateral action of one party in labeling an intermediary as a consignee does not render the putative consignee liable for demurrage").

In opposition to this line of authorities, Norfolk Southern relies on a recent decision by the Third Circuit in CSX Transportation Co. v. Novolog Bucks County, 502 F.3d 247 (3d Cir. 2007). The Third Circuit "decline[d] to follow" the authorities cited above, specifically the Seventh Circuit's decision in South Tec. Id. at 259. Instead, the Third Circuit held that "recipients of freight who are named as consignees on bills of lading are subject to liability for demurrage charges arising after they accept delivery unless they act as agents of another and comply with the notification procedures established in ICCTA's consignee-agent liability provision, 49 U.S.C. § 10743(a)(1)." Id. at 254. According to the Third Circuit, the statutory provision applies to an entity listed as consignee on the bill of lading, even if the entity was unilaterally named as consignee by the shipper, is not a party to the transportation contract, and has no ownership interest in the freight. Id. at 252. Under the Third Circuit's reading of the statute, "a transloader or other such entity, if named on the bill of lading as the

sole consignee, is <u>presumptively liable</u> for demurrage charges arising from unloading delays, unless it accepts the freight as the agent of another and notifies the carrier of its status [as an agent] in writing prior to the delivery." <u>Id.</u> at 250 (emphasis added). The court reasoned that consignee status was established by "the documented designation of an entity as a consignee and that entity's acceptance of the freight." <u>Id.</u> at 257.

In this case, Norfolk Southern argues, based on the <u>Novolog</u> decision, that Savannah Re-Load is liable for demurrage because (1) Savannah Re-Load is identified as a consignee on the bills of lading; (2) Savannah Re-Load accepted delivery of the rail cars and the freight; and (3) Savannah Re-Load did not notify Norfolk Southern of its agent status and the name and address of the beneficial owner. Effectively, Norfolk Southern contends that Savannah Re-Load accepted it status as consignee by accepting the freight, and it suggests that Savannah Re-Load could have rejected these terms by rejecting the freight or giving notice of its agent status.

The Court disagrees. Consistent with Seventh Circuit's decision in <u>South Tec</u>, the Court holds that ICCTA's consignee-agent liability provision applies only to consignees. <u>South Tec</u>, 337 F.3d at 817. Therefore, an

entity that is not a consignee is not obligated to comply with the statutory notice provisions in order to avoid liability for demurrage, and such an entity does not become a consignee by operation of the statute.

The Court also holds that a theory of acceptance by conduct is inapplicable to a situation where Savannah Re-Load was unaware of terms set unilaterally by third parties. As discussed above, there is no evidence that Savannah Re-Load was provided with the bills of lading or informed of the terms of the bills of lading. The Court finds that the Novolog rule of presumptive liability cannot function in a situation where the receiver of freight is not given notice that it has been listed as a consignee by third parties.

In South Tec, the Seventh Circuit suggested that being listed on the bills of lading, "coupled with other factors," might be enough to render a warehouseman a consignee. South Tec, 337 F.3d at 821. Such "other factors" could include receiving notice of a consignee designation, playing an active role in the railroad transportation contract, or having an interest in or control over the goods. See id. at 821-22; W. Md. Ry. Co.,

1987 WL 16153 at *4; Matson, 383 F. Supp. at 157. But factors such as these are not at play in this case.[3]

Next, Norfolk Southern argues that "regardless of whether Savannah Re-Load was provided with the necessary documentation, the fact remains that the rail cars were delivered to Savannah [Re-Load] by Norfolk Southern, and that while those rail cars were in the control, custody, and possession of Savannah [Re-Load], the federal law requiring demurrage was frustrated by Savannah[ Re-Load]'s detention of rail cars in excess of the allotted amount of time." (Plf.'s Reply at 7.) Although such a rule would be appealing in its simplicity, it is inconsistent with the well-established law that one must be a consignee or a party to the transportation contract in order to be liable for demurrage. Middle Atl. Conference, 353 F. Supp. at 1118. And as explained above, Savannah Re-Load cannot be made a consignee by the unilateral action of a third party

---

[3] Norfolk Southern states that after it demanded payment for the demurrage charges, representatives from Savannah Re-Load disputed the manner in which the demurrage charges were calculated, but never disputed that it was the consignee that had responsibility to pay the demurrage charges. With this statement, Norfolk Southern suggests that Savannah Re-Load admitted its liability in negotiations prior to the filing of this lawsuit. This is insufficient to create a legal liability. Savannah Re-Load did not pay any of the demurrage invoices, and Norfolk Southern brought this lawsuit as a result.

where Savannah Re-Load was not given notice that it was listed as a consignee in the bills of lading.

## CONCLUSION

Accordingly, Savannah Re-Load's Motion for Summary Judgment is **GRANTED**. Norfolk Southern's Motion for Partial Summary Judgment is **DENIED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 15th day of September, 2008.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA